UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
RICHARD CAMPBELL,

                                Plaintiff,                      Index No.:

     -against-                              **COMPLAINT**

RITE AID CORPORATION

                                Defendant.
---------------------------------------------------------------------X

Plaintiff, **RICHARD CAMPBELL**, by and through his attorneys, JONATHAN A. TAND & ASSOCIATES, P.C., respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## I.    PRELIMINARY STATEMENT

1. This is a civil action seeking equitable relief, compensatory and punitive damages, costs, and attorneys' fees, brought forth due to the unlawful actions of Defendant, and is brought pursuant to redress violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 to 29 U.S.C. § 634 ("ADEA"), ; violations of the New York State Human Rights Law, Executive Law § 290 *et seq.* ("NYSHRL") and all other appropriate rules, regulations, statutes and ordinances.

## II.    JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The unlawful acts alleged herein were committed within the State of New York, County of Suffolk, New York. Accordingly, this action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

4.  The supplemental jurisdiction of this Court is invoked over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.  The jurisdictional prerequisites of this lawsuit have been satisfied. Specifically, Plaintiff filed an EEOC Charge on December 5, 2013. Defendant responded to this charge on March 27, 2014. The EEOC Charge number is 520-2013-01458. The EEOC issued a Determination on February 28, 2017 stating: "…the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on account of his age and against a class of similarly situated individuals because of their age." A copy of said determination is annexed hereto as Exhibit "A". This action was commenced within ninety (90) days from receipt of the EEOC Notice of Right to Sue dated December 29, 2017.

## III.   PARTIES

6.  Plaintiff, Richard Campbell (hereinafter referred to as "Campbell" or "Plaintiff"), is a sixty-three (63) year old man and, at all relevant times herein, was a resident and domiciliary of Suffolk County, New York. Moreover, at all relevant times herein, Plaintiff was an "employee" as that term is defined by all relevant statutes.

7.  Defendant, Rite Aid Corporation (hereinafter "Rite Aid" or "Defendant"), at all relevant times herein, was and still is a corporation operating retail pharmacies across several states, including New York. Rite Aid's main corporate office is located at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

## IV.   FACTUAL ALLEGATIONS

8.  Plaintiff is a sixty-three (63) year old man born on January 28, 1955 who had been employed as a Store Manager by Defendant and its predecessors in interest, Eckerd Drug Stores and Genovese Drug Stores, Inc. since July 6, 1998 until his termination on November 26, 2012.

9.  In or around July 2008, Defendant Rite Aid took over all of the Eckard Drug Stores which purchased all of the Genovese Drug Stores and the time that Plaintiff accumulated while working for Genovese was credited towards his tenure at Rite Aid.

10. Campbell was terminated from his employment by Defendant on November 26, 2012.

11. Campbell was terminated from his employment by Defendant due to his age.

12. Up until June 2011, Plaintiff's work performance for Defendant was positive. He never received a negative report and all of his reviews were "above average" and "competent".

13. In fact, that year, Plaintiff received a sales and profit bonus and he also achieved inventory results that exceeded the results from the previous six (6) years.

14. Everything changed for Plaintiff when, in or around June 2011, a new Western Suffolk District Manager was assigned to Plaintiff's store in North Babylon, New York.

15. At that time, the new District Manager, Michael Lysohir ("Lysohir") was in his late 30's and Plaintiff was fifty-five (55) years of age.

16. The store that Plaintiff was managing (North Babylon) experienced increased sales due to the fact that Defendant purchased the files of an independent pharmacy and new customers were coming into the store.

17. Due to the increased volume of customers, it became difficult for Plaintiff to maintain the store while at the same time meeting the goals set by the district concerning housekeeping issues and new programs.

18. Plaintiff was responsible for the front of the house and was meeting his sales goals and payroll goals.

19. On several occasions, Plaintiff requested that Lysohir increase payroll so that more employees could be hired to assist with the housekeeping issues since most of the employees were required to be on the registers due to the increased volume of customers.

20. From the time that the North Babylon store purchased the files from the independent pharmacy which resulted in markedly increased sales, Plaintiff never received an increase in payroll which would allow him to hire more employees.

21. A series of natural disasters occurred which directly impacted the running of the store.

22. In or around August 2001, Hurricane Irene occurred which forced the North Babylon store to close for one (1) day. This occurred during the "back to school" sales season.

23. On or about October 29, 2011 (the busiest Halloween selling period) a wind and snowstorm occurred which again forced the closure of the North Babylon store. Sales fell flat since costumes and candy did not sell which caused the merchandise to remain on the shelves which inhibited the placement of the Christmas merchandise.

24. Thereafter, the store had to turn over to its Christmas merchandise within one (1) week. As was a common practice, extra management assistance was sent to the store to assist in the changeover. Plaintiff was written up for not having the turn over completed on time.

25. Two (2) to three (3) weeks later, Plaintiff was again written up. This time, it was due to 100 per cent of the sale signs not being hung up.

26. Plaintiff attempted to explain to Lysohir that there were extra signs and therefore there was no necessity for them, and he requested that Lysohir do an audit which would confirm that all of the signs were properly posted. Lysohir refused to do so and Plaintiff was nevertheless written up.

27. Shortly thereafter, Lysohir met with Plaintiff and inquired if Plaintiff was capable of running the North Babylon store, even though Plaintiff had successfully managed the store for the previous two (2) years. In fact, during that time, Plaintiff received positive performance reviews and was never questioned about his management capabilities. Plaintiff responded in the affirmative and they discussed what needed to be done with the store and what Plaintiff needed to do to be successful.

28. However, in or around January 2012, Plaintiff was advised that he would be transferred to Huntington Station-a low volume store and that Lysohir would remain as his manager.

29. Since Huntington Station was a low volume store, and it was rumored that it was going to close since it previously had no store manager, its sales were low and not meeting its goals.

30. Plaintiff was aware that Defendant had a pattern of transferring older managers to stores that were going to close and then terminating them.

31. The transfer entailed the change of Plaintiff's employment status from a salaried exempt employee to an hourly non-exempt employee. In addition, Plaintiff was not permitted to work more that forty-five (45) hours per week.

32. When Plaintiff arrived at the Huntington Station store, there were four (4) front end employees, who were under Plaintiff's direct supervision. Several store programs were either not in use or not up to date, including: the Back Room Inventory Program, the Blue Dot Program, the Freshness Program, and the Shelf Tags (Planograms) Program.

33. Plaintiff was expected to reinstitute all of the programs and bring the store up to date with only four (4) employees. However, Plaintiff was never advised as to the time frame he was to do so.

34. Due to the impossibility of meeting the goals expected of him, Plaintiff received his first official counseling at the Huntington Station store in July 2012 during which time he was only advised what was wrong with the store. However, he received no guidance as to his performance.

35. Plaintiff was also written up because of the Blue Dot Program. However, upon investigation, Plaintiff learned that even though other stores were similarly deficient in that program, only the Plaintiff received write ups. Those stores include but are not limited to: West Islip, Massapequa Park and North Babylon, all of which were managed by managers in their 20's and 30's.

36. Several months later, a supermarket opened up in the same shopping center as Defendant's Huntington Station store.

37. Although sales increased and the sales plan was exceeded, Plaintiff did not receive additional payroll and was therefore unable to fully keep up with the required tasks.

38. In or around July 2012, Lysohir brought in Carlos Barillas, a manager from another store to review the operations of the Huntington Station store and to make recommendations.

39. Although the same staff had worked at the store for ten (10) years, Barillas indicated that Plaintiff did not properly train the staff.

40. Plaintiff indicated to Barillas that he needed more payroll in order to hire additional staff since front end sales were above plan and Plaintiff was not permitted to spend above plan.

41. In or around August 2012, a water main break in the stockroom occurred which necessitated the removal of merchandise-some of which sustained damage. Due to this incident, Plaintiff and his staff had to concentrate their efforts to salvage merchandise and therefore Plaintiff and staff were delayed in working on Lysohir's directives.

42. In or around October 28, 2012, Hurricane Sandy hit which forced the closure of the Huntington Station store for one (1) day. The store remained without power for two (2) more days but remained open.

43. As a result, Halloween sales were severely impacted and the necessary conversion of the store to Christmas displays was delayed for in excess of one (1) week.

44. In or around November 2012, Lysohir came into the Huntington Station store and was infuriated because the store was not Christmas ready. Plaintiff explained that since he did not have increased payroll, he could not hire additional staff and therefore he could not get everything completed on time.

45. On or about November 26, 2012 Lysohir called Plaintiff into his office and terminated Plaintiff's employment.

46. At that time, all of the store's front end financial metrics exceeded plan.

47. The pretextual reason Plaintiff was given for his termination was for operational deficiency/performance issues.

48. Due to Plaintiff's age, he was set up for failure by Defendant whereas younger similarly situated managers who had the same or worse job performance were not disciplined and terminated by Defendant.

49. But for Plaintiff's age, he would not have been terminated.

50. Defendant exhibited a pattern and practice of setting older managers up for failure and then terminating their employment. The following are some but not all, examples of Defendant's pattern and practice of age discrimination.

51. In or around March 2010 Richard Pandolfi, who was in his mid 50's, was the manager of Defendant's Bayshore store where he received good reviews. Thereafter, he was transferred

to the West Babylon store which was smaller and about to close. That store did, in fact, close in or around March 2011 and Pandolfi was terminated from his employment with Defendant. Upon information and belief, despite his years of experience and positive reviews, Pandolfi was not given the option of managing a store in another location although openings existed.

52. In or around 2011, Frank Bronckhurt, another manager in his mid 50's was transferred by Defendant to its failing Elwood store. When the store closed in or around November 2011, Bronckhurt's employment with Defendant was terminated. Upon information and belief, in lieu of termination, Defendant could have, but did not, transfer Bronckhurt to another store.

53. In or around 2011, Dianne Chatterton, an assistant manager in her mid 40's was transferred by Defendant to its failing Elwood store. When the store closed in or around November 2011, Chatterton's employment with Defendant was terminated. Upon information and belief, in lieu of termination, Defendant could have, but did not, transfer Chatterton to another store.

54. In contrast to Plaintiff's, Pandolfi's, Bronckhurst's and Chatterton's treatment by Defendant, younger similarly situated managers and assistant managers were not terminated by Defendant. The following are some, but not all of Defendant's preferential treatment of younger employees.

55. In or around 2012, Marc Solomon who was in his mid 30's was the manager of Defendant's Syosset store. Upon information and belief, while managing that store, Solomon experienced the same issues that Plaintiff did while managing the North Babylon and Huntington Station stores and was neither counseled nor terminated. In fact, thereafter in or around 2012-2013, Solomon was promoted to manager of the Oyster Bay store.

56. In or around 2011, Jill Paff who was in her mid 20's was the assistant manager of the Elwood store which closed in or around November 2011. Unlike Dianne Chatterton who was terminated, Defendant transferred Paff to the Huntington Station East store.

57. In or around 2011, Brian Singh who was in his late 20's was the assistant manager of Defendant's Oyster Bay store. Upon information and belief, even though a majority of that store's operational programs were deficient, in or around January 2012, Defendant promoted Singh to store manager of its West Babylon store.

58. In or around 2011, Anthony Schry was assistant manager of Defendant's North Babylon store which was alleged to have experienced operational problems. Upon information and belief, despite the operational problems, in or around late 2012, Defendant promoted Schry to store manager of its Northport store.

## CLAIMS FOR RELIEF

## AS AND FOR A FIRST CAUSE OF ACTION

### *Unlawful Discrimination on the basis of Plaintiff's Age under the ADEA*

59. Plaintiff repeats and re-alleges each and every allegation contained herein.

60. The ADEA prohibits discrimination in the terms, conditions and privileges of employment on the basis of an individual's age.

61. At all relevant times herein, Campbell was a member of a protected class due to his age.

62. At all relevant times herein Campbell was qualified for employment with Defendant and was able to perform the essential functions of the job.

63. Defendant subjected Campbell to disparate treatment due to Campbell's age.

64. Defendant discriminated against Campbell in violation of the ADEA by terminating his employment on the basis of age.

65. Defendant acted intentionally and with malice and reckless indifference to Campbell's rights under the ADEA and is thereby liable to Plaintiff for compensatory and punitive damages under the ADEA.

66. As a result of Defendant's discriminatory acts, Campbell has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits and has suffered other monetary damages and compensatory damages for inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation and loss of reputation.

67. By reason of the foregoing, Defendant has unlawfully discriminated against Plaintiff as concerns his terms, conditions and privileges of employment, in that Defendant has created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately, because of Plaintiff's age. These acts by Defendant are in violation of the Age discrimination in Employment Act ("ADEA").

68. As a direct result of Defendant's violation of ADEA, as alleged herein above, Plaintiff has suffered damages, which are set forth more fully below.

## AS IN FOR THE SECOND CAUSE OF ACTION

### *Unlawful Discrimination on the Basis of Plaintiff's Age Under the NYSHRL*

69. Plaintiff repeats and re-alleges each and every allegation contained herein.

70. The NYSHRL prohibits discrimination in the terms, conditions and privileges of employment on the basis of an individual's age.

71. At all relevant times herein, Campbell was a member of a protected class due to his age.

72. At all relevant times herein, Campbell was qualified for employment with Defendant.

73. As described above, Defendant discriminated against Campbell in violation of the NYSHRL by terminating Campbell on the basis of his age.

74. Defendant acted intentionally and with malice and reckless indifference to Campbell's rights under the NYSHRL and are thereby liable to Plaintiff for compensatory damages under the NYSHRL.

75. As a result of Defendant's discriminatory acts, Campbell has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and has suffered other monetary damages and compensatory damages for inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation and loss of reputation.

76. By reason of the foregoing, Defendant has unlawfully discriminated against Plaintiff as concerns his terms, conditions and privileges of employment, in that Defendant created a hostile work environment, subjected Plaintiff to an atmosphere of adverse action and treated him disparately, because of Plaintiff's age. These acts by Defendant are in violation of the New York State Human Rights Law ("NYSHRL")

77. As a direct result of the Defendant's violation of the NYSHRL as alleged herein above, Plaintiff has suffered damages, which are set forth more fully below.


**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, bonus pay, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which he is entitled, including but not limited to:

1.  Awarding reasonable attorney's fees and the costs and disbursements of this action;

2.  Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiff demands a trial by jury.

Dated: March 23, 2018
       Garden City, New York                Respectfully submitted,

                                             Jonathan A. Tand & Associates, P.C.
                                             *Attorneys for Plaintiff Richard Campbell*

                             By:   _____
                                   Hope Senzer Gabor
                                   1025 Old Country Road, Suite 314
                                   Westbury, New York 11590
                                   T: (516) 393-9151
                                   F: (516) 467-1361
                                   E: hgabor@jtandlaw.com