UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RICHARD CAMPBELL,

                Plaintiff,                  **REPORT AND**
                                                            **RECOMMENDATION**
     -against-                       18-CV-1799 (SJF)(SIL)

RITE AID CORPORATION,

                Defendant.
----------------------------------------------------------------x

**STEVEN I. LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for Report and Recommendation in this age discrimination action brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, *et seq.*, is Defendant Rite Aid of New York, Inc.'s ("Rite Aid" or "Defendant") (incorrectly styled "Rite Aid Corporation" in the caption) motion for summary judgment. *See* Docket Entry ("DE") [25]. For the reasons set forth below, the Court respectfully recommends that the motion be granted and that Plaintiff's claims be dismissed in their entirety, with prejudice.

**I.    BACKGROUND**

The following facts are undisputed unless otherwise indicated.

**A.  Plaintiff's Employment History**

Rite Aid is a company that operates retail pharmacy and convenience stores in various states throughout the country. Statement of Undisputed Material Facts ("SUMF"), DE [25-1], ¶ 1. In 2008, Rite Aid acquired Eckerd Drug Stores, which

1

employed Plaintiff Richard Campbell ("Campbell" or "Plaintiff") at the time in North Babylon, New York.  SUMF ¶ 2.  After the acquisition, Campbell became a Store Manager and oversaw overall operations of the front end of the store.[1]  *Id*.  Campbell's responsibilities included hiring, training, evaluating, disciplining, and discharging front-end employees; implementing the various Rite Aid sales promotions, inventory controls, and other programs required by Defendant's corporate management; ensuring the store's physical security, safety, and cleanliness; preparing and merchandising the store for various "seasonal" periods; supervising the unloading of trucks that deliver merchandise to the store and seeing to it that such merchandise was "packed out"—*i.e.*, placed on the store's sales floor and shelves for sale; and securing and depositing the cash received by the store from customers.  SUMF ¶ 3; February 25, 2019 Deposition of Richard Campbell ("Campbell Dep."), DE [25-4], at 38:4-39:5; 40:18-41:12; 42:13-44:21.

In July 2011, Michael Lysohir became a Rite Aid District Manager overseeing Campbell's store.  March 26, 2019 Deposition of Michael Lysohir ("Lysohir Dep."), DE [25-5], at 8:10-16, 10:19-13:12.  In this context, Lysohir visited the North Babylon store two to three times each month.  SUMF ¶ 6.  During these visits he met with Campbell and other staff to check on store conditions, operations, and the store's overall functioning.  *Id*.

---

[1] The front end of the store is the department store, as opposed to the store's pharmacy.

B. **Plaintiff's Performance at the North Babylon Store**

After several months as District Manager, Lysohir developed concerns about Plaintiff's performance. SUMF ¶ 7. These included Campbell's failure to meet requirements for various Company programs; poor store standards; daily store maintenance and appearance; and the store's condition at the time of closing. *Id*. Lysohir met with Plaintiff several times to help him improve his performance, coaching him with his front-end responsibilities, including scheduling and supervision. SUMF ¶ 8. Lysohir's March 2011 annual performance review of Campbell reflected that he was "Competent" but that he needed to train and develop store associates, plan tasks more efficiently, take a more proactive approach to customer service, and continue to follow Rite Aid programs to reverse the store's negative sales trend. SUMF ¶ 9; March 19, 2011 Annual Performance Review, DE [25-8].

On June 23, 2011, Bill Romaine, a senior Rite Aid corporate executive, visited the North Babylon store in order to rate its quality. SUMF ¶¶ 11-13. In an email summarizing his observations, Romaine rated Campbell's store as a "red plus" on a rating scale of green, yellow, and red, green being the most favorable. SUMF ¶ 13. The North Babylon location was the lowest rated of seven stores visited by Romaine in Lysohir's district. *Id*. Subsequently, Lysohir emailed Plaintiff on three occasions in August of 2011 to highlight concerns regarding his performance. SUMF ¶ 15. These emails reviewed the need for Campbell to schedule associates in accordance with store needs, implement planograms, and rectify the delays in getting truck-

3

delivered merchandise timely packed-out onto the sales floor and shelves. SUMF ¶ 15. On October 11, 2011, Lysohir sent Plaintiff another email outlining continued deficiencies with his store, particularly the delays in packing out seasonal merchandise, employee accountability, and the tidiness of the store at the start of each business day. SUMF ¶ 16. Later that same day, Lysohir emailed Campbell about his continued deficiencies, including cleanliness issues, empty coolers, and a lack of store organization at the end of the day. SUMF ¶ 16.

On November 9, 2011, Lysohir issued Plaintiff a Written Counseling for ongoing poor job performance and deficiencies in store standards and programs. SUMF ¶ 19; November 9, 2011 Counseling/Development Form ("Nov. 9 Counseling"), DE [25-14]. In response, Campbell indicated that he intended to adhere to company standards and better manage his time and his associates to meet all deadlines. *Id*. On January 3, 2012, after visiting the North Babylon store, Lysohir sent Plaintiff an email setting forth his observations and evaluating the store as "a red." SUMF ¶ 22. Campbell agreed with the items pointed out in the email as needing work. *Id*.

C. **Plaintiff's Transfer and Performance at the Huntington Station East Store**

On or about the second week of January 2012, Lysohir transferred Plaintiff to Rite Aid's Huntington Station East store. SUMF ¶ 24. This transfer was made because Brian Singh, the current store manager there, had done a good job and Lysohir wanted to transfer Singh to the high-volume store in North Babylon. SUMF ¶ 24. Moreover, because the Huntington Station East store had a lower volume of merchandise, Lysohir thought it would be more manageable for Campbell. SUMF ¶

4

26. Once Plaintiff transitioned, Lysohir visited the Huntington Station East store two to three times a month. SUMF ¶ 28. During these visits, Lysoshir observed several substandard conditions, including Campbell being behind on planograms and seasonal product placement, and the overall appearance of the store. SUMF ¶¶ 28-29. In a March 2012 performance review, Lysohir noted that while many of the metrics reflected Singh's supervisory work, those related to Plaintiff's were rated as "needs development." SUMF ¶ 33.

From March through June 2012, monthly emails were circulated within the district that rated each store's performance. SUMF ¶¶ 35-37. In each email, Campbell's store was rated the worst or the second worst in at least one category. *Id*. In March, Plaintiff's store was the second worst with respect to performing cycle counts. SUMF ¶ 35. In April, Campbell's store was the worst with respect to collecting charitable contributions from customers. SUMF ¶ 36. In both May and June, Plaintiff's store was the worst or second worst with respect to customer satisfaction scores. SUMF ¶ 37.

In June 2012, Lysohir performed a walkthrough of Campbell's store, and noted many of the same problems he had as Store Manager of the North Babylon location. SUMF ¶ 38. The same deficiencies were noted again in Lysohir's walkthrough on July 13, 2012. SUMF ¶ 39. As a result of these continuing problems, Lysohir placed Plaintiff on a final written warning, pointing to his inability to supervise store associates, maintain acceptable store conditions, implement Company programs, and achieve better customer satisfaction. SUMF ¶ 40. Campbell responded to this letter

5

by indicating that he would "meet Company expectations as regards store standards and operation" and "hold associates accountable for timely completion of tasks." SUMF ¶ 42; July 13, 2012 Counseling/Development Form, DE [25-27]. Despite this promise, Lysohir's evaluation of Plaintiff in September 2012 noted many of the same issues. SUMF ¶ 43.

On September 7, 2012, Carlos Barillas (a Rite Aid store manager who trained new store managers) visited the Huntington East Station store and noted Campbell's inadequate training of associates, failure to timely implement planograms, and his inability to hold associates accountable for substandard work. SUMF ¶ 44; September 8, 2012 Email, DE [25-29]. In September, Plaintiff's store was rated as the worst in the district with respect to timely shipping recalled items back to the distribution center. SUMF ¶ 44. In both September and October, Campbell's store was rated worst in the district with respect to the number of food items in the store that were beyond their expiration dates. SUMF ¶¶ 44-45.

Based on Plaintiff's continued failure to improve the store's performance despite nearly two years of assistance from Lysohir, he was terminated on November 26, 2012. SUMF ¶¶ 48-50.

On March 23, 2018, Campbell brought this action against Rite Aid, alleging unlawful discrimination on the basis of his age under the ADEA and the NYSHRL. After the close of discovery, Defendant brought this Motion for Summary Judgment.

6

## II.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party."). In

7

determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).

### III. DISCUSSION

Applying the standards detailed above, and for the reasons set forth herein, the Court respectfully recommends that Defendant's motion for summary judgment be granted in its entirety.

Plaintiff has brought age discrimination claims under the ADEA and NYSHRL. The Court must analyze each of these claims applying the *McDonnell Douglas* three-part burden-shifting analysis.[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *see Abdus-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (applying the same analysis to claims under the NYSHRL); *Patacca v. CSC Holdings, LLC*, No. 16-cv-0689, 2019 WL 1676001, at *9 (E.D.N.Y. Apr. 17, 2019) ("[C]ourts are to apply the *McDonnell Douglas* burden shifting analysis to employment discrimination claims.") (citing *Spiegel v.*

---

[2] The Court notes that the Supreme Court has not "definitively decided" whether the *McDonnell Douglas* burden-shifting used in Title VII cases applies to ADEA claims. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175, 129 S. Ct. 2343, 2349, n. 2 (2009). However, the Second Circuit has "held that 'we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit.'" *Timbie v. Eli Lilly & Co.*, 429 Fed. Appx. 20, 21 (2d Cir. 2011) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)).

8

*Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)).  Initially, Campbell must establish a *prima facie* case of age discrimination by demonstrating that "(1) he was a member of the protected age group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).  "If the plaintiff meets the minimal burden of establishing a *prima facie* case, the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action."  *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013), *aff'd*, 586 Fed.Appx. 739 (2d Cir. 2014); *see also Hendry v. Donahue*, 931 F.Supp. 2d 441, 448 (E.D.N.Y. 2013) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824).  Rite Aid's burden here is light.  It must only "articulate an explanation that, if true, would connote lawful behavior."  *Penberg v. HealthBridge Mgmt.*, 823 F.Supp. 2d 166, 176 (E.D.N.Y. 2011) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998)).  Campbell must then offer evidence sufficient to show a material issue of fact demonstrating that Defendant's reason for his termination "was not the true reason" and that his age was the "but for" cause.  *Wesley-Dickson*, 973 F.Supp. 2d at 397; *see also Gross*, 557 U.S. at 176-78, 129 S. Ct. at 2350-51; *see McGuire-Welch v. House of the Good Shepherd's Tilton Sch.*, 720 Fed. App'x 58, 60 (2d Cir. 2018) (citing *Gorzynski,* 596 F.3d at 106).  The "but for" causation standard applies equally under the ADEA and the NYSHRL. *See Brannigan v. Bd. of Educ. of Levittown Union Free*

9

*Sch. Dist.*, 18 A.D.3d 787, 796 (2d Cir. 2005) ("The elements of an age discrimination claim under the [NYSHRL] and the ADEA are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes."); *Powell v. Delta Airlines*, 145 F.Supp. 3d 189, 198 (E.D.N.Y. 2015) ("Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims brought under the ADEA."). Plaintiff can "satisf[y] this burden by presenting facts, which 'taken in [his] favor, suffice to . . . [show that] a triable issue [exists] as to whether [his] age was a "but for" cause of [his] termination.'" *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (quoting *Gorzynski*, 596 F.3d at 106).

The Second Circuit takes particular care when granting summary judgment in employment discrimination cases. An employer's intent can be difficult to determine, and "allegations [often] require exploration into an employer's motivation and intent for an employment decision." *Pealo v. AAF Mcuay, Inc.*, 140 F.Supp. 2d 233, 236 (N.D.N.Y. 2001) (quoting *Griffin v. Ambika Corp.*, 103 F.Supp. 2d 297, 306 (S.D.N.Y. 2000)). Plaintiff's sworn testimony should be viewed in a light most favorable to him and "deserves to be generously construed." *Federal Deposit Ins. Corp. v. Arcadia Marine, Inc.*, 642 F.Supp. 1157, 1160 (S.D.N.Y. 1986).

### A. *Prima Facie* Case of Discrimination

For the purpose of this motion, it is undisputed that Campbell is a member of the protected class, that he was qualified for his position with Rite Aid, and that he suffered an adverse employment action. Defendant argues, however, that Plaintiff

fails to establish circumstances giving rise to an inference of discrimination as a matter of law. To raise an inference of age discrimination by circumstantial evidence, Campbell must show that he was "(1) similarly situated to other younger employees; and (2) treated less favorably than those employees." *Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240, 2017 WL 2222924, at *17 (E.D.N.Y. May 18, 2017) (citing *Ehrbar v. Forest Hills Hosp.*, 131 F.Supp. 3d 5, 21 (E.D.N.Y. 2015)). These comparators must be "similarly situated in all material respects," *Johnson v. Andy Frain Servs.*, 638 Fed.Appx. 68, 70 (2d Cir. 2016) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)), which may vary case to case but will generally include "[t]he employees' positions, job responsibilities, and reporting structures." *Ehrbar*, 131 F. Supp. 3d at 21-22 (quoting *Ruiz v. County of Rockland*, 609 F.3d 468, 493-94 (2d Cir. 2010)).

Campbell can also raise an inference of discrimination by demonstrating that he was replaced by a younger person. *See Francis v. Elmford Sch. Dist.*, 263 Fed.Appx. 175, 177 (2d Cir. 2008) (citing *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007)); *Testa v. Carefusion*, No. 14-cv-5202, 2016 WL 4099113 (E.D.N.Y. Aug. 2, 2016). In applying these standards, the Court "may rely on any combination of the relevant circumstances to conclude that an inference of discrimination has been established." *Giugliano*, 2017 WL 2222924, at *18 (citing *Testa,* 2016 WL 4099113, *4-*5).

In support of his claim of discrimination, Campbell argues that the reasons for his termination were not enforced against younger, less experienced managers, and

11

that other older Rite Aid managers were treated similarly to him. *See* Affidavit of Richard Campbell ("Campbell Aff."), DE [26-2], ¶¶ 8-10. Further, Campbell notes that at the time of his earlier transfer, he was replaced as store manager in North Babylon by a younger employee, Brian Singh. Affidavit of Michael Lysohir ("Lysohir Aff."), DE [25-7], ¶ 15. Although Campbell's overall evidence is thin, the Court concludes that it is sufficient to warrant further analysis under the *McDonnell Douglas* burden shifting test.

### B. Legitimate, Non-Discriminatory Reasons for Termination

Once a *prima facie* case is established, the burden shifts to Rite Aid to offer a legitimate, non-discriminatory reason for its actions, which it has done. Defendant has submitted sufficient evidence that Campbell was terminated as a result of his poor performance. While Plaintiff managed the North Babylon store, it was the second worst in cycle counts and inventory accuracy. November 11, 2011 Email, DE [25-13]; December 14, 2011 Email, DE [25-15]. Plaintiff received his first Written Counseling on November 9, 2011. SUMF ¶ 19; Nov. 9 Counseling/Development Form, DE [14]. Despite this counseling, Campbell's performance issues at the North Babylon location continued into 2012. SUMF ¶¶ 22-23. This led to Plaintiff's transfer to the Huntington Station East store, which had lower volume and was more manageable. SUMF ¶¶ 24, 26-27. Plaintiff admitted that his poor performance was the reason for his transfer. Campbell Dep. at 173:10-174:16. Campbell's substandard performance continued into the summer of 2012. SUMF ¶ 40. His store was ranked worst in charitable collections, customer satisfaction, recalls, and freshness. March

12

26, 2012 Email, DE [25-22]; April 25, 2012 Email, DE [25-23]; September 20, 2012 Email, DE [25-31]. Plaintiff acknowledged that this pattern of poor performance led to his discharge. Campbell Dep. at 264:8.

The Second Circuit has made clear that an employee's poor performance constitutes a lawful nondiscriminatory reason for his or her termination. *See Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (poor job performance is a valid and nondiscriminatory reason for discharge); *Weber v. City of New York*, 973 F.Supp. 2d 227, 255 (E.D.N.Y. 2013). Accordingly, Rite Aid has provided ample evidence to demonstrate that Plaintiff's discharge was nondiscriminatory.

### C. Pretext

With the burden shifted back to Campbell, he must provide evidence that, taken in his favor, raises a question of material fact regarding whether his age was the "but for" cause of his termination. *See Gross*, 557 U.S. at 180, 129 S.Ct. at 2353. Demonstrating that age was a "but for" cause "does not mean 'that age was the employers [*sic*] *only consideration*, but rather that the adverse employment action *would not have occurred without it.*'" *Ehrbar*, 131 F.Supp. at 20 (emphasis in original) (quoting *Delaney*, 766 F.3d at 169). The burden of establishing pretext is higher than what was required of Plaintiff to state his *prima facie* case of discrimination. *See John v. Kingsbrook Jewish Med. Ctr.*, No. 11-cv-3624, 2014 U.S. Dist. LEXIS 39322, at *51-*52, 2014 WL 1236804 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 598 Fed.Appx. 798 (2d Cir. 2015). However, Campbell may rely on the same evidence to demonstrate pretext

13

as he used to support his *prima facie* case. *See Kerzer v. Kingly Mfg*, 156 F.3d 396, 402 (2d Cir. 1998); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994).

While Plaintiff may have established a *prima facie* case for age discrimination, he has not provided sufficient evidence to create an issue of material fact as to whether age discrimination was the "but for" cause of his termination. *Abdu-Brisson*, 239 F.3d at 470 (citing *Weinstock v. Columbia University*, 224 F.3d 33, 50 (2d Cir. 2000)) (while plaintiff may have "met [his] *de minimis* burden of establishing a *prima facie* case of age discrimination, [he] has failed to produce sufficient evidence to support a rational finding that the non-discriminatory business reasons proffered by the defendant for the challenged employment actions were false."); *see also Markovich v. City of New York*, 588 Fed.App'x 76, 77 (2d Cir. 2015) ("While [Plaintiff] established a *prima facie* case of discrimination, he did not dispute the accuracy of the observations reported in his negative performance reviews."); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (Plaintiff "put forward nothing other than conclusory allegations" to suggest that age discrimination was the but-for cause of her termination). Campbell does not dispute his poor work performance. In fact, the evidence establishes that Plaintiff agreed that his performance was a problem. Campbell Dep. at 173:10-174:16; 264:8.

Moreover, Campbell has not presented sufficient evidence that Defendant's dissatisfaction with his performance was in any way pretextual. Initially Plaintiff's Rule 56.1 counterstatement admits almost all of Defendant's facts, and for most of those he disputes, he does so without the required citations to the record. *See*

E.D.N.Y. Local R. 56.1 (2018); DE [26-3] (Plaintiff's Response to Statement of Undisputed Material Facts in Support of Defendant's Motion of Summary Judgment "PSUMF"); *compare* PSUMF ¶¶ 1-6, 9-14, 16-24, 28, 31, 35, 37-39, 42-43, 46, 50 (admitting facts set forth in Defendant's Rule 56.1 Statement) *with* ¶¶ 7-8, 15, 26-27, 29-30, 32, 40, 44, 47-49 (admitting facts in Defendant's Rule 56.1 Statement but disputing the veracity or reasoning of those statements with no supporting citation to the record).

Campbell's affidavit, submitted in opposition to the motion for summary judgment, is referred to only once in his Rule 56.1 statement, but does discuss the treatment of other older managers as evidence of age discrimination. Affidavit of Richard Campbell ("Campbell Aff."), DE [26-2] ¶¶ 7-20. These statements, however, are largely conclusory and comprised of inadmissible hearsay. The conclusory statements include generalities such as older managers being critiqued based on ancillary issues, without any details about which managers were critiqued, who critiqued them, what was said or when. *See id.* ¶ 8.

Campbell then goes on to identify four other managers over the age of 40 who he claims were subject to age discrimination: Richard Padolfi, Diane Chatterson, Douglas St. John and Frank Bronkhurst. *See id.* ¶¶ 13-16. Nevertheless, the statements concerning these individuals are all inadmissible hearsay, and as such cannot be considered on summary judgment. Fed. R. Civ. P. 56(c)(4); *see Sprayregen v. A. Gugliotta Dev., Inc.*, 166 F.Supp. 3d 291, 300 (E.D.N.Y. 2016) ("only admissible evidence may be considered when deciding a motion for summary judgment.");

*Building Industry Fund v. Local Union No. 3, Intern. Broth. of Elec. Workers*, 992 F.Supp. 162, 173 (E.D.N.Y. 1996) (quoting *Burlington Coat Factory Warehouse v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)) ("it is . . . well-settled that an affidavit that is based upon hearsay is a nullity in reviewing a summary judgment motion."). For example, Campbell quotes what Lysohir said to these other managers, who in turn apparently told Plaintiff. *See* Campbell Aff. ¶¶ 13-16. Had deposition testimony or affidavits been submitted from these individuals, or any other details that would allow further evaluation, the Court might have been able to consider them, but no such evidence was offered. Accordingly, the statements in Campbell's affidavit cannot defeat Defendant's motion. As a result, Plaintiff fails to submit sufficient evidence that his termination for poor performance was pretextual, or that age was the "but for" cause of his adverse treatment. Summary judgment is therefore appropriate, and the Court respectfully recommends that Defendant's motion be granted, and that Plaintiff's claims be dismissed in their entirety.

## IV.  CONCLUSION

For the reasons set forth herein, it is respectfully recommended that Defendant's motion for summary judgment be granted and the Plaintiff's claims be dismissed in their entirety, with prejudice.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the

right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
          June 18, 2020

<u>s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge